NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| T.H. and K.H. o/b/o minor child, A.H.<br><br>Plaintiffs/Counterdefendants,<br><br>v.<br><br>CLINTON TWP. BD. OF EDUCATION,<br>HUNTERDON CO., NEW JERSEY<br><br>Defendant/Counterclaimant. | Hon. Stanley R. Chesler, U.S.D.J.<br><br>Civ. No. 05-3709 (SRC)<br><br>**OPINION** |

**CHESLER, District Judge**

     **THIS MATTER** comes before the Court on cross-motions by the Plaintiffs and the Defendant for Summary Judgment (docket items #4 and 5).  The Court having considered the papers submitted by the parties, and for good cause shown, **DENIES** the Plaintiffs' Motion (docket item #4) and **GRANTS** the Defendant's Cross-Motion (docket item #5) for the reasons set forth below.

## I. BACKGROUND

     This Individuals with Disabilities Education Act ("IDEA") case concerns reimbursement for the costs incurred with the unilateral placement of A.H. at the Craig School, an unapproved educational facility located in Mountain Lakes, New Jersey.  The gravamen of this appeal is the

decision of the Administrative Law Judge ("ALJ") Israel D. Dubin, granting a summary decision in favor of the Clinton Township School District (the "CTSD") on the grounds that A.H. had not complied with the jurisdictional prerequisites, as contained in N.J.A.C. 6A:14-2, which require a student to have previously received special education and related services from the district of residence before reimbursement for a unilateral placement by the child's parents can be granted. Because the ALJ found that A.H. had not received special education and related services from CTSD prior to her parents unilaterally placing her in the Craig School, the ALJ granted a summary decision in favor of CTSD because A.H. failed to meet the statutory prerequisites for eligibility to claim reimbursement.

A.      **Individuals With Disabilities Education Act, 20 U.S.C. 1400 *et seq.***

        The Individuals with Disabilities Education Act ("IDEA") is the vehicle created by Congress to ensure states follow a mandate to provide a "free and appropriate education" ("FAPE") to all disabled children.  20 U.S.C. §1412.  "Educational instruction specially designed to meet the unique needs of the handicapped child," coupled with services "necessary to permit the child to 'benefit' from the instruction" constitute a FAPE.  Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 756 (3d Cir. 1995).

        For each child identified as eligible for special education, a written statement called an Individual Education Program ("IEP") is developed.  The IEP, which addresses and includes several elements as provided under 20 U.S.C. §1414(d)(1)(A), is designed to ensure implementation of a FAPE for the child.  S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d

2

260, 264 (3d Cir. 2003).  In addition to defining the content required, IDEA provides that an IEP should be developed considering the strengths of the child, concerns of the parents, and recent evaluations of the child.  Id.  The team responsible for developing the IEP consists of the child's parent(s), at least one of the child's special education teachers, a curriculum specialist and, if the parent or school board requests, a person with special knowledge or expertise related to the child's education.  Id.; see also 20 U.S.C. §1414(d)(1)(B).  IDEA further mandates that the team review the IEP annually "to determine whether the annual goals for the child are being achieved." 20 U.S.C. §1414(d)(4).

Under IDEA, as well as the New Jersey regulations adopted to implement it, there exists a strong preference for 'mainstreaming,' in other words, requiring education in the least restrictive environment.  20 U.S.C. § 1412(a)(5)(A).  The Third Circuit has interpreted this requirement to mean "mandating education 'in the least restrictive environment that will provide [the student] with a meaningful educational benefit.'"  S.H., 336 F.3d at 265 (quoting T.R. v. Kingwood Twp. Bd. Educ., 205 F.3d 572, 578 (3d Cir. 2000)).  "The least restrictive environment is one that, to the greatest extent possible, satisfactorily educates disabled children together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled."  Carlisle Area Sch. v. Scott P., 62 F.3d 520, 535 (3d Cir. 1995).

IDEA does not require that a school district maximize a student's potential or provide the best possible education.  Rather, the statutory obligation is satisfied "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction."  Bd. of Educ. v. Rowley, 458 U.S. 176, 203 (1982).  The IEP must provide

3

"meaningful" access to education, id. at 192, and confer "some educational benefit" upon the child.  Id. at 200.  In order to be appropriate, however, this educational benefit must be more than "trivial."  Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 247 (3d Cir. 1999).  An appropriate IEP is "gauged in relation to the child's potential," and must offer the potential for "significant learning" and "meaningful benefit."  Id.

When a parent believes a school district has not provided their child with a FAPE as required under IDEA, he or she may object to the IEP and request a due process hearing or a mediation conference.  See Lascari v. Bd. of Educ., 116 N.J. 30, 36 (1989) (citing applicable New Jersey state regulations).   Traditionally, the burden of proof to demonstrate compliance with IDEA has been upon the school district.  The parent(s) needed only place the appropriateness of the IEP at issue, and the burden would shift to the school district to prove that the IEP was indeed appropriate.  Recently, however, the Third Circuit has changed this rule.  Following the Supreme Court's holding in Schaeffer v. Weast, 126 S.Ct. 528 (2005), the Third Circuit has held that the "burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief."  L.E. v. Ramsey Bd. of Ed., 435 F.3d 384, 391 (3d Cir. 2006) (citing Schaeffer, 126 S.Ct. at 537).  In a situation where a child has been unilaterally placed by his or her parent(s) in an educational setting contrary to the IEP, they may still be entitled to reimbursement, but only if the parents meet their burden of establishing the program proposed in the IEP was inappropriate "and if the parents demonstrate they have acted in good faith."  Id.; see also 20 U.S.C. § 1412(a)(10)(C)(ii).

While the burden of proof now lies with the party seeking relief, the focus of the Court's

inquiry remains on evaluating "the IEP actually offered and not one that the school board could have provided if it had been so inclined." Lascari, 116 N.J. at 46. Once an ALJ issues a final order following a due process hearing, the aggrieved party may appeal that decision to a state court of competent jurisdiction or to a federal district court. 20 U.S.C. § 1415(c)(2).

**B.    Current Dispute**

A.H. is an eleven year old girl who was enrolled in CTSD prior to the beginning of her first grade year. In the first grade, A.H. was enrolled in CTSD's Reading Recovery program for first grade students experiencing difficulty with reading skills. During the 2002-03 school year, when A.H. was in the third grade, she was evaluated, at her parents' request, by CTSD's child study team. The study team held that A.H. was not eligible for special education and related services. A.H.'s parents disagreed and requested an independent evaluation be conducted. CTSD rejected the recommendation of the independent evaluator to classify A.H., based on concerns regarding the way the independent tests were administered. Following mediation sessions, CTSD enrolled A.H. with supportive services designed to strengthen her reading and language skills, but still did not classify her as eligible for special education and related services.

Frustrated by CTSD's failure to classify their daughter, A.H.'s parents moved the family to Point Pleasant Beach, where they owned a summer home. They enrolled A.H. in the Point Pleasant Beach School District ("PPBSD") for the fourth grade and requested an evaluation by PPBSD's child study team. PPBSD's team determined that A.H. was eligible for special education services, and classified her as having a "specific learning disability." On September

23, 2003, PPBSD proposed an IEP for A.H. which called for her to receive services to assist with her reading and writing skills.

A.H.'s parents were concerned that PPBSD was a small district and their proposed IEP could not provide their daughter with the full range of services they felt she required. On December 1, 2003, they placed their daughter in the Craig School, a private school for children with disabilities, in Mountain Lakes, New Jersey. The Craig School is not approved by the New Jersey Department of Education as a school to educate disabled students.

Concerned about their daughter's commute from Point Pleasant Beach to the Craig School, A.H.'s parents re-enrolled A.H. in CTSD in February 2004. They presented CTSD with the IEP prepared by PPBSD, and requested that CTSD classify their daughter. At CTSD's request, A.H.'s parents waived their right to an IEP until A.H. finished the fourth grade at the Craig School. In the meantime, CTSD began conducting evaluations of A.H. in order to make a classification determination and to assist in developing an IEP. On July 1, 2004, CTSD determined that A.H. was eligible for special education services and proposed an IEP whereby A.H. would receive in-class support in her areas of identified weakness. The District's IEP expressly rejected A.H.'s parents' request to keep A.H. at the Craig School - finding that A.H.'s needs could be met by attending her neighborhood school.

A.H.'s parents rejected the CTSD's proposed IEP and filed for due process on July 14, 2004. In an opinion dated April 25, 2005, the ALJ hearing the case granted a summary decision in favor of CTSD on the grounds that A.H. had not complied with the jurisdictional prerequisites,

as contained in N.J.A.C. 6A:14-2, to be eligible to claim reimbursement.  Under N.J.A.C. 6A:14-2, a student must have previously received special education and related services from their district of residence *before* they are eligible to claim reimbursement for a unilateral placement at a private school.  The ALJ held that "since A.H. has never received special education and related services from the Clinton Township District Board of Education, [the parents'] claim for reimbursement must be denied."  (ALJ Op. at 6.)

On or about January 27, 2006, A.H.'s parents filed a motion for summary judgment with this Court seeking reversal of the ALJ's decision that denied them reimbursement for their unilateral private placement of A.H. for the 2001/02, 2003/04, and 2005/06 school years under IDEA and applicable case law.  CTSD filed a cross-motion for summary judgment with this Court on or about February 6, 2006, seeking affirmation of the ALJ's decision.

## II. STANDARD OF REVIEW

The motions before the Court are cross-motions for summary judgment, although they are essentially appeals of the ALJ's decision.  In considering whether to affirm administrative findings, this Court must first determine the proper weight to accord the ALJ's decision.  "[J]udicial review in IDEA cases differs substantively from judicial review in other agency actions, in which the courts are generally confined to the administrative record and are held to a highly deferential standard of review."  Susan N., 70 F.3d at 757 (citation omitted).  In Board of Education v. Rowley, the Supreme Court announced a distinctive standard of review which federal courts must apply when reviewing an ALJ's decisions under IDEA:

7

> [T]he provision that a reviewing court base its decision on the "preponderance of the evidence" is by no means an invitation to the courts to substitute their own notions of sounds educational policy for those school authorities which they review. The very importance with which Congress has attached to compliance with certain procedures in the preparation of an IEP would be frustrated if a court were permitted simply to set state decisions at nought. The fact that § 1415(e) requires that the reviewing court "receive the records of the [state] administrative proceedings" carries with it the implied requirement that due weight shall be given to these proceedings.

Rowley, 458 U.S. at 206. In short, the purpose of the "due weight" standard is to "prevent the court from imposing its own view of preferable educational methods on the states." Id.

This level of deference to administrative proceedings from Rowley, however, applies only to matters where the ALJ has been called upon to judge whether a child has been offered a free and appropriate education. In the present case, the issue facing the Court is one of statutory interpretation. Accordingly, this Court is not bound by Rowley deference to the ALJ's decision and may consider the issue of A.H.'s statutory eligibility for reimbursement de novo. See Muller on Behalf of Muller v. Committee on Special Educ. Of East Islip Union Free School Dist., 145 F.3d 95 (2d Cir. 1998) (noting that "state administrative officials were in no better position than the district court to make conclusions with respect to [] statutory eligibility based on the record.") (citing Mrs. B. v. Milford Bd. of Educ., 103 F.3d 1114, 1122 (2d Cir. 1997)).

### III. DISCUSSION

The Plaintiffs are seeking a determination from this Court that CTSD's IEP was inappropriate to offer A.H. a FAPE. The issue of the appropriateness of the IEP, however, was not fully adjudicated by the ALJ. The ALJ did not reach the issue of the appropriateness of

CTSD's IEP because he found that the Plaintiffs were statutorily barred from seeking reimbursement for their unilateral private placement of A.H. at the Craig School. This Court, after conducting a thorough review of the record before it, concurs with the ALJ's decision that the Plaintiffs are barred under IDEA and applicable case law from seeking reimbursement from CTSD for their unilateral placement of A.H. at the Craig School. As such, for the reasons set forth below, this Court **AFFIRMS** the ALJ's decision, **DENIES** the Plaintiff's motion for summary judgment, and **GRANTS** the Defendant's cross-motion for summary judgment.

As the ALJ noted in his decision, "a public school district will not be required to reimburse parents for the expenses attendant to the unilateral placement of their child unless certain necessary elements are present." (ALJ Opinion at 5.) These necessary elements are set out in the federal IDEA statutes, which require, in part:

> If the parents of a child with a disability, who previously received special education and related services under the authority of a public agency, enroll the child in a private elementary or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment.

20 U.S.C. § 1412(a)(10)(C)(ii) (emphasis added). New Jersey, as a participating state, has enacted its own regulations which were directly relied upon by the ALJ in his analysis. The governing state laws that set forth the rules regarding reimbursement for unilateral placement of a child by their parents specifically provide:

> If the parents of a student with a disability, who previously received special education and related services from the district of residence, enroll the student in a nonpublic school, an early childhood program, or approved private school for the disabled without the consent of or referral by the district board of education, an administrative

9

> law judge may require the district to reimburse the parents for the cost of that enrollment if the administrative law judge finds that the district had not made a free, appropriate public education available to that student in a timely manner prior to that enrollment and that the private placement is appropriate. A parental placement may be found to be appropriate by a court of competent jurisdiction or an administrative law judge according to N.J.A.C. 6A:14-6.5, even if it does not meet the standards that apply to the education provided by the district board of education.

N.J.A.C. 6A:14-2.10(b) (emphasis added). New Jersey law clearly sets forth a predicate for parents to receive reimbursement for a unilateral placement - namely that the child receive special education and related services from the district of residence. Id.

A.H. was currently attending public school in PPBSD when she was diagnosed with a learning disability. Within two or three months following A.H.'s initial classification by PPBSD, her parents unilaterally moved her to the Craig School. While A.H. was enrolled at the Craig School, her parents relocated to their primary residence in Clinton Township, and requested that CTSD accept PPBSD's classification of A.H. and develop an IEP for their daughter. During CTSD's evaluation of A.H., she remained enrolled at the Craig School. A.H. never received special education and related services from CTSD because CTSD's IEP, presented on July 1, 2004, was rejected by A.H.'s parents, who proceeded to file for Due Process. It is, therefore, not contested that A.H. never received special education and related services from her current district of residence, CTSD, prior to her parents seeking reimbursement from CTSD for A.H.'s continued placement at the Craig School.

The statutory provisions of 20 U.S.C. § 1412(a)(10)(C)(ii) require a student to have received special education and related services as a prerequisite to parents being permitted to seek reimbursement for a unilateral placement of their child. This provision "clearly envision[s]

10

Congressional intent to require prior notice to a school district by a child's parents that their child is in need of special education before allowing the child to be unilaterally placed at a private school at that school district's expense."[1]  J.B. v. Watchung Hills Regional School Dist. Bd. of Educ., 2006 WL 38936, (D.N.J. January 5, 2006) (citing Greenland School District v. Amy N., 358 F.3d 150, 160 (1st Cir. 2004).  This notice requirement is designed to give the school district an opportunity, "*before* the child is removed, to assemble a team, evaluate the child, devise an appropriate IEP, and demonstrate whether or not a FAPE can be provided in the public schools." Id. at *8 (emphasis added).  This provision "ensures that a parent's rejection of a public school placement is not based on mere speculation as to whether the recommended public school placement would have been inappropriate."  Board of Educ. of City School Dist. of the City of New York v. Tom F. o/b/o Gilbert F., 2005 WL 22866, *3 (S.D.N.Y. January 4, 2005).

The situation in the current case is precisely what the statutory prerequisite that a student receive special education and related services from the public agency before being entitled to seek reimbursement for a unilateral private placement is designed to address.  In his findings of fact, the ALJ specifically noted that A.H.'s parents have "acknowledged that they effectuated the unilateral placement because of their belief that Point Pleasant Beach was too small a district to

---

[1] The Plaintiffs, in support of their position, cite to prior cases of parents with disabled children who were diagnosed prior to reaching school age not being required to enroll their children in schools where their parents felt they were not being offered an appropriate placement as being allowed to avoid "'the untenable position of acquiescing to an inappropriate placement in order to preserve their right to reimbursement.'"  (Pl. Br. at 15 (quoting Justin G. V. Board of Education of Montgomery County, 148 F.Supp.2d 576, 587 (D.Md. 2001).)  The rationale of these cases, however, is not applicable to the current case since they are limited in their application to children who are diagnosed with disabilities prior to reaching school age whereas, in the present case, A.H. is a school age child whose parents are moving her into a school district and requesting that district fund her continued placement at a private school.

11

provide A.H. with the 'full panoply of services that she required.'  In other words, at that particular time, their decision to place A.H. at the Craig School had nothing to do with a failure on the part of Clinton Township District Board of Education to offer their daughter the opportunity for a free and appropriate public education." (ALJ Op. at 6.)  A.H.'s parents unilaterally enrolled their child at the Craig School before she was re-enrolled at CTSD and, after returning to their primary residence in Clinton Township, they kept her at the Craig School even after CTSD offered A.H. an in-district program.  As the ALJ noted, A.H.'s parents "presented the [D]istrict with a *fait accompli*," that A.H. would be educated at the Craig School.  (Id. at 7.)

A.H.'s parents' claim that they rejected CTSD's IEP on the grounds that "it was virtually identical in providing the services [that A.H.] received when she was in third grade." (Pl. Br., Ex. A at 4, ¶ 16.)  This objection non withstanding, the facts demonstrate that their rejection of CTSD's IEP had no basis other than their speculation that CTSD's recommended placement would not have been appropriate for their daughter.  In January, 2003, when A.H. was in third grade, CTSD's evaluation of A.H. found that she was not eligible for special education services, but she was placed in small group instruction to assist with spelling and reading comprehension. (Zogby Cert., Ex. B, at 5.)  A.H. was removed from CTSD at the end of the third grade and moved to PPBSD.  When A.H.'s parents re-enrolled her at CTSD the following year, CTSD developed an IEP for A.H. in July 2004, based upon its recently conducted evaluations of A.H. to measure her current level of educational performance.  (See Zogby Cert. at Ex. O at 4 (CTSD's July 2004 IEP for A.H.).)  A.H.'s results from the Woodcock Johnson III Tests of Achievement showed A.H. within average range for basic reading, writing, and academic skills and above

average for mathematics.  (Id. at 4-5.)  A.H.'s results on the Test of Written Language (TOWL-3)

show that she scored within the average range in her overall writing.  (Id. at 5.)  A.H. also tested

within the average range on the Peabody Picture Vocabulary Test Third Edition (PPVT-III) for

understanding of receptive vocabulary, and her results on the Gray Oral Reading Tests-4 (GORT-

4) also showed that she demonstrated average reading skills.  (Id.)  Based on their recent

evaluation, CTSD's IEP offered A.H. additional assistance in reading, writing, and science/social

studies including small group instruction, text on tape materials, and other instructional strategies

to assist her in a mainstreamed classroom environment.  (Id. at 10.)

   It is not disputed in this case that A.H. never received special education services from

CTSD.  There is, accordingly, no objective measure as to whether or not A.H.'s educational

needs could have been adequately provided for within CTSD according to the provisions of the

July 2004 IEP.  Allowing A.H.'s parents to seek reimbursement for the unilateral placement of

their daughter at the Craig School would run contrary to both the plain wording of and the intent

behind the statutory requirements that a student receive special educational services from their

district of residence as a prerequisite to allowing reimbursement for a unilateral placement under

IDEA.  Therefore, the decision of the ALJ denying the Plaintiffs' claims for reimbursement is

affirmed.

## IV. CONCLUSION

   As required by the standard, this Court has reviewed the record as well as the papers of

the moving parties.  Having done so, this Court finds that the Plaintiffs are ineligible, under the

provisions of N.J.A.C. 6A:14-2.10(b), to seeking reimbursement from CTSD for the unilateral

placement of their daughter at the Craig School.  The Plaintiffs' Cross-Motion is hereby

**DENIED**, and the Defendant's Motion is hereby **GRANTED**.  An appropriate form of order will

be filed herewith.


Dated:  April 25, 2006


   /s Stanley R. Chesler    
Stanley R. Chesler, U.S.D.J.